Filed 7/20/26  P. v. Perkins CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B340752 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA054106) |
| v. | |
| ALONZO PERKINS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Judith L. Meyer, Judge.  Affirmed.

Danalynn Pritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kristen J. Inberg and Melanie Dorian, Deputy Attorneys General, for Plaintiff and Respondent.

In 2004 a jury convicted Alonzo Perkins of the second degree murder of Eric Martinez, the attempted willful, deliberate, and premeditated murder of Donte Terrell, second degree robbery, and possession of a firearm by a felon. However, the jury found not true a special-circumstances allegation that Martinez's murder was committed during the commission of a robbery. Perkins's codefendant, Jeremy Jones, was Martinez's actual killer and was convicted of first degree murder.

In 2022 Perkins petitioned for resentencing under Penal Code former section 1170.95 (now section 1172.6).[1] Following briefing and an evidentiary hearing at which no new evidence was presented, the superior court denied the petition. The court found that Perkins was guilty of murder as a direct aider and abettor in the premeditated murder of Martinez with the specific intent to kill, and he was also a major participant in a robbery who acted with reckless disregard for human life.[2]

Perkins contends the jury's not true finding on the robbery-murder special-circumstances allegation and the jury's failure to convict Perkins of first degree murder precluded the superior court from finding at the evidentiary hearing that Perkins was guilty as a direct aider and abettor of express malice murder. Perkins also contends the court erred in denying his motion to exclude from the evidentiary hearing Terrell's identification of Perkins as a perpetrator. We affirm.

---

[1]    Further undesignated statutory references are to the Penal Code.

[2]    The superior court also found Perkins was the direct perpetrator of the attempted murder of Terrell. Perkins does not challenge the denial of his resentencing petition with respect to his attempted murder conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Evidence at Trial*

Terrell testified that on the morning of August 28, 2002, he and his friend Martinez drove in Martinez's white sports car to a house on Trafford Street in Long Beach. Jones came out of the house and spoke with Martinez for a few minutes; Martinez and Terrell then left the area. Terrell recognized Jones from junior high school.

Later the same morning Martinez and Terrell drove back to the Trafford Street house, where Martinez intended to sell marijuana. Jones was standing at the side of the house and motioned for Martinez to come with him. Martinez left the car running in front of the house and went with Jones, while Terrell stayed in the car. After 10 or 15 minutes, Jones came from the side of the house and motioned for Terrell to turn off the ignition and come back to where Jones was standing. Terrell complied, but halfway between the house and the garage in the back, Jones came up behind Terrell, pulled a gun on him, and directed him through a door into the closed garage. Jones told Terrell, "'You done got caught up in some of Eric's mess. Tried to get him to take you home, but we still here.'"

After entering the garage, Terrell saw another man (whom he later identified as Perkins) standing behind Martinez holding a gun. Martinez's hands were taped behind his back. Perkins looked at Terrell and said, "'Somebody's gonna die in here tonight or today.'" Perkins taped Terrell's hands behind his back and took his wallet, money, cigarettes, and keys (including the keys to Martinez's car). Perkins "put" Terrell on the ground on his stomach and said, "'This is gangster.'" Terrell said, "'[Y]ou guys don't have to do this. You can let us go. We won't say anything.'"

3

Jones then "put" Martinez on the ground. Martinez said, "'You don't have to do this. I can give you some money.'" Jones said he wanted $50,000. Martinez said he did not have that amount, and Jones responded, "'It's not even about the money.'" Perkins then took Martinez's car keys from Terrell and left the garage for about three to five minutes. When Perkins returned, he looked at Terrell and said, "'It's time to die.'" He placed a belt around Terrell's neck, but Terrell tucked his chin to prevent the belt from choking him. Perkins lifted Terrell off the ground, and the tape around Terrell's wrists snapped. Jones then came over and hit Terrell over the head, and Terrell fell back on the ground. Jones and Perkins tied Terrell's hands with speaker wire.

Jones went to Martinez and began choking him with a shirt. Martinez was lying on his back, and Jones sat on Martinez's stomach and pushed down on his throat with a metal bar for several minutes, until Martinez made a gurgling sound. Jones then wrapped an extension cord around Martinez's neck and pulled on it. Martinez's eyes had glazed over, and he had a blank expression on his face; however, a third man entered the garage, felt Martinez's pulse, and said, "'He's not dead yet. Hurry up. He's almost dead.'" After the third man left the garage, Terrell broke the wire that was tied around his hands, ran out the door, jumped the back gate, and flagged down construction workers, who called the police.

That afternoon Long Beach police officers responded to the Trafford Street house, where Jones lived with his parents. They found exercise equipment, speaker wire, an extension cord, and a roll of duct tape inside the garage. There was a .380-caliber handgun sitting on a bench press and blood on the floor near a weight bar. The next day, police found Martinez's car in

Compton, with Martinez's body in the trunk and a plastic bag over his head. Jones's bloody palm print was found on the car's rear fender. An autopsy showed ligature marks on Martinez's neck and a laceration on his head. Martinez had died of asphyxia and blunt force trauma to the head.

Carolyn Morris was the Jones family's next-door neighbor and had known Jones for 25 years. She also knew Perkins, who had been a friend of her son Darryl for about five years. Morris saw Perkins around the family's Trafford Street house several times on the morning of August 28, and at around 10:30 or 11:00 a.m. she saw Perkins driving Jones's blue van. She later saw a white sports car pull up in front of the Joneses' driveway with two people inside, and she heard Jones say, "'C'mon back.'" Just before the police arrived, she saw Jones drive off in the white car, following the blue van. About 45 minutes after the police arrived at the scene, Morris received a call from Perkins, who asked her "what was going on around there." Jones also called Morris and asked what was going on at Jones's house and whether the police had gone into Jones's garage.

On the day of the murder, Terrell identified Jones in a photographic lineup, but he was unable to identify Perkins in a separate six-pack photographic lineup. Two weeks later Terrell was shown the same photographic lineup and was again unable to identify Perkins. He circled photographs of two other men and said they most resembled the second person involved in the crime, and he made a notation that "'if [he] could hear the suspect's voice in a line-up[,] that would help.'" In a separate photographic lineup, Terrell identified the third man who entered the garage and checked Martinez's pulse.

On September 19 Terrell identified Perkins in a live lineup at the jail. Terrell asked each participant to say, "'Somebody's gonna die here tonight'" and "'This is gangster.'" Perkins was the only person who was in the live lineup and the earlier photographic lineup. Terrell also testified at trial that the person who tried to choke him had a chipped tooth, something he had not told anyone prior to trial. The prosecutor asked Perkins to walk in front of the jury and open his mouth "so [the jury] can see the chip."

Jones presented an alibi defense. Lisa Jones, the mother of Jones's child, testified Jones was with her on the morning of August 28. Jones testified that when he later returned to the Trafford Street house, he found Morris's son Darryl was there "with blood all over him." Martinez's body was in the garage with an extension cord around his neck. Jones disposed of the body in Martinez's car so his parents would not find out there was a dead body in the house. Jones had been "decent" friends with Perkins for about eight years. Perkins did not call any witnesses.

B.     *The Jury Instructions, Verdict, and Sentencing*

The jury convicted Perkins of the second degree murder of Martinez (§ 187, subd. (a); count 1); the attempted willful, deliberate, and premeditated murder of Terrell (§§ 664, 187, subd. (a); count 2); second degree robbery (§ 211; count 3); and possession of a firearm by a felon (§ 12021, subd. (a)(1); count 5). The jury found true the special-circumstance allegation that Perkins personally used a firearm in the commission of the murder (§ 12022.53, subd. (b)) but not true with respect to the attempted murder and robbery. As to count 1, the jury found not true the robbery-murder special-circumstances allegation (§ 190.2, subd. (a)(17)). The jury convicted Jones on similar

6

charges, except, as relevant here, Jones was convicted of first degree murder on count 1. But, like Perkins, the jury found not true the robbery-murder special-circumstances allegation.

In April 2004 the trial court sentenced Perkins to 25 years to life on count 1 (15 years to life for the murder plus 10 years for the firearm enhancement), plus a consecutive term of life on count 2. The court also sentenced Perkins on counts 2 and 5 to an aggregate consecutive sentence of one year eight months.

Perkins appealed from the judgment, and we affirmed. (*People v. Jones,* (Oct. 23, 2007, B174393) [nonpub. opn.] (*Jones*).) We rejected Perkins's contention that the trial court should have suppressed Terrell's pretrial identification on the basis the identification procedure, in which Perkins was the only person who appeared in the photographic and jailhouse lineups, was unduly suggestive in violation of his due process rights. (*Ibid.*) We observed, "From the evidence in this case, it appears that Terrell was not influenced by the photo lineup at all," and "the photos that Terrell circled in the photo lineup . . . appear very similar to the photograph of Perkins from the live lineup (arguably more so than the actual photograph of Perkins . . . in the photo lineup)." (*Ibid.*)

C.    *Perkins's Petition for Resentencing and the Evidentiary Hearing*

On April 14, 2022 Perkins filed a form petition for resentencing under former section 1170.95 stating he had been convicted of murder and attempted murder on a theory of imputed malice and could not presently be convicted of the offenses because of changes made to sections 188 and 189, effective January 1, 2019. The superior court appointed counsel for Perkins and ordered further briefing.

In his brief Perkins did not argue for resentencing as to the attempted murder of Terrell. Following briefing by the parties, the superior court set an evidentiary hearing on the petition.

In advance of the evidentiary hearing, Perkins filed a motion to exclude Terrell's identification of Perkins as one of the perpetrators, arguing the pretrial identification procedures were unduly suggestive and the identification was inadmissible under current law, which applied to the evidentiary hearing under section 1172.6, subdivision (d)(3).[3]

---

[3] On June 24, 2024 Perkins, representing himself, filed a handwritten amended petition for habeas corpus challenging the identification of Perkins and arguing ineffective assistance of his trial attorney, among other issues. Perkins attached to his habeas petition a declaration from Mitchell L. Eisen, Ph.D., an expert in the field of forensic identification. Eisen opined that there were several factors undermining Terrell's identification and an effective defense attorney would have challenged the identification. Perkins's counsel did not file the Eisen declaration in connection with the resentencing petition and suppression motion. The superior court denied the habeas petition on July 8, 2024, finding the petition was "filled with gibberish" that "has nothing to do with the 1172.6 petition." Perkins's amended habeas petition is not relevant to this appeal. Likewise, Perkin's attorney did not render ineffective assistance of counsel (as argued in this appeal) by failing to seek to admit Dr. Eisen's declaration in connection with the 1172.6 petition; as we discuss, the certainty of Terrell's identification is not relevant to this appeal.

At the September 16, 2024 evidentiary hearing, in which the superior court also considered the suppression motion, the superior court indicated it had reviewed the trial transcript, the parties' briefs, and the record on appeal from *Jones, supra*, B174393 (including the information, minute orders, jury instructions, verdicts, conviction records, and our decision). Neither party submitted additional evidence. The prosecutor argued the evidence at trial showed Perkins was directly involved in both the killing of Martinez and the attempt to kill Terrell, and Perkins's conduct showed "he's a direct perpetrator and an aider and abet[or] to these crimes" with "no malice imputed from somewhere else." Perkins's attorney argued the jury's not true finding on the robbery-murder special-circumstances allegation and second degree murder conviction meant Perkins was "not a major participant who acted [with] reckless, indifferen[ce] to human life," precluding the superior court from making a finding he was guilty of felony murder under current law. With respect to the suppression motion, Perkins's attorney argued the defective identification process made Terrell's identification inadmissible under both constitutional due process principles and the Evidence Code. The prosecutor responded that a resentencing proceeding under section 1172.6 was not the proper venue to challenge the admissibility of evidence of the defendant's guilt.

After hearing argument, the superior court ruled it would "not relitigate identification," citing *People v. Palacios* (2024) 101 Cal.App.5th 942 (*Palacios*), and it denied the suppression motion. The court observed that it was "satisfied beyond a reasonable doubt" as to Perkins's identification and involvement in the case. Further, other evidence allowed the jury to

9

determine Perkins was one of the participants, including his behavior after the crime.

The superior court denied the petition for resentencing. With respect to the murder of Martinez, the court stated it "was satisfied that Mr. Perkins is guilty in count 1 of the murder of Eric Martinez under a theory that he was a direct aider [and] abett[or] in the first degree premeditated and deliberated murder." The court continued, "In addition, . . . just because the jury found as not true . . . a special circumstance, it's abundantly clear to me that he was a major participant with a reckless disregard if there was a robbery. [¶] Either way, he's a direct aider and abett[or]. He had specific intent and that was made exceptionally clear to me in count 2, where . . . he was actually a direct perpetrator to try and kill someone and with specific intent. So one guy took one victim, [Perkins] took the other victim, and they are working in conjunction with one another, and they both had specific intent." On the same date, the court issued a written ruling reiterating its findings and denying the petition.

Perkins timely appealed.

## DISCUSSION

A. *Governing Law and Standard of Review*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), effective January 1, 2019, eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Curiel* (2023) 15 Cal.5th 433, 448-449 (*Curiel*); *People v. Strong* (2022) 13 Cal.5th 698, 707-708.) Section 188, subdivision (a)(3), now prohibits imputing malice

10

based solely on an individual's participation in a crime and requires proof of malice to convict a defendant of murder, except under the revised felony-murder rule as set forth in section 189, subdivision (e). (*Curiel*, at p. 448.) Section 189, subdivision (e), now requires the People to prove specific facts relating to the defendant's individual culpability: the defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, aided or assisted in the commission of murder in the first degree (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life as described in section 190.2, subdivision (d) (§ 189, subd. (e)(3)). (*Curiel*, at p. 448.)

Senate Bill No. 775 (2021-2022 Reg. Sess.), effective January 1, 2022, expanded the scope of potential relief by applying Senate Bill 1437's ameliorative changes to individuals convicted of attempted murder and voluntary manslaughter. (See § 1172.6, subd. (a).) The legislation also extended relief to defendants convicted of murder under any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a), as amended by Stats. 2021, ch. 551, § 2; see *People v. Antonelli* (2025) 17 Cal.5th 719, 725.)

Section 1172.6 provides a procedure for an individual convicted of felony murder, murder or attempted murder under the natural and probable consequences doctrine, or manslaughter to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if the individual could presently not be convicted of murder, attempted murder, or manslaughter because of changes to sections 188 and 189.

11

(*Curiel*, *supra*, 15 Cal.5th at pp. 449-450; *People v. Strong, supra*, 13 Cal.5th at p. 708.)  If the petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the sentencing court, upon request, must appoint counsel to represent the petitioner.  (§ 1172.6, subd. (b)(3); *People v. Lewis* (2021) 11 Cal.5th 952, 962-963.)  If the petitioner makes the requisite prima facie showing of entitlement to relief, the superior court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the challenged conviction and resentence the petitioner on any remaining counts.  (§ 1172.6, subds. (c) & (d)(1).)

Section 1172.6, subdivision (d)(3), provides that at the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019.  The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed."  Further, "[t]he prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."  (§ 1172.6, subd. (d)(3).)

We review the superior court's decision to deny the petition after an evidentiary hearing for substantial evidence but review independently "whether the trial court misunderstood the elements of the applicable offense."  (*People v. Reyes* (2023)

12

14 Cal.5th 981, 988-989; accord, *People v. Taylor* (2025) 108 Cal.App.5th 849, 861.)

B.    *Substantial Evidence Supports the Superior Court's Finding Perkins Was Guilty of Murder as a Director Aider and Abettor with Express Malice*

"[U]nder direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.'" (*People v. Gentile* (2020) 10 Cal.5th 830, 843; accord, *Curiel, supra*, 15 Cal.5th at p. 463.)  An "'aider and abettor's mental state must be at least that required of the direct perpetrator,' and when the crime is murder, the 'aider and abettor must know and share the murderous intent of the actual perpetrator.'" (*People v. Maciel* (2013) 57 Cal.4th 482, 518; accord, *People v. McCoy* (2001) 25 Cal.4th 1111, 1118.)

"It is well settled that [Senate Bill 1437] 'd[id] not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought.'" (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1252, quoting *People v. Gentile, supra*, 10 Cal.5th at p. 848; accord, *People v. Vargas* (2022) 84 Cal.App.5th 943, 953 (*Vargas*) ["'One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law.'"].)  Malice "may be express or implied." (§ 188, subd. (a); see *Gentile*, at p. 844.)  Malice "is express when there is a manifest intent to kill." (*Gentile*, at p. 844; see § 188, subd. (a)(1).)

13

"Establishing aider and abettor liability 'requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime.'" (*People v. Valdez* (2012) 55 Cal.4th 82, 146; accord, *People v. Reyes, supra*, 14 Cal.5th at pp. 990-991.) "[A]n aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." (*People v. Beeman* (1984) 35 Cal.3d 547, 560.) "'The aider and abettor doctrine merely makes aiders and abettors liable for their accomplices' actions as well as their own. It obviates the necessity to decide who was the aider and abettor and who [was] the direct perpetrator or to what extent each played which role.'" (*People v. Gomez* (2018) 6 Cal.5th 243, 279.)

"Aiding and abetting may be shown by circumstantial evidence." (*People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599.) "'Factors to be considered by the trier of fact in determining "whether one is an aider and abettor include presence at the scene of the crime, failure to take steps to attempt to prevent the commission of the crime, companionship, flight, and conduct before and after the crime."'" (*Vargas, supra*, 84 Cal.App.5th at p. 955; accord, *People v. Campbell* (1994) 25 Cal.App.4th 402, 409.) "Motive is another circumstance to be considered in determining aiding and abetting liability." (*Glukhoy*, at p. 599.)

14

Substantial evidence supports the superior court's finding that Perkins was a direct aider and abettor with express malice. The evidence showed that Perkins knew that Jones intended to kill Martinez, and he intended to assist Jones in Martinez's killing. When Jones brought Terrell into the garage at gunpoint, Perkins was standing behind Martinez (whose hands were bound) holding a gun, and Perkins said that someone was going to die that day or night. Perkins, after binding Terrell and robbing him, put Terrell on the ground while Jones put Martinez on the ground. Perkins said, "'This is gangster.'" Both victims pleaded for their lives, but Perkins declared, "'It's time to die.'" Perkins began to choke Terrell with a belt, while Jones in the same room (the garage) tried to kill Martinez by choking him with a shirt, a metal bar, and extension cord, until Martinez was unconscious and almost dead. Terrell avoided the same fate not because Perkins and Jones spared him, but because he broke free and escaped. Jones and Perkins thus acted in concert to carry out two murders; each as an accomplice to the other's killing or attempted killing.

Moreover, Perkins's conduct before, during, and after Martinez's killing supported a finding of aiding and abetting. (*Vargas, supra*, 84 Cal.App.5th at p. 955.) As discussed, Perkins was standing behind Martinez holding a gun when Jones entered the garage, supporting a reasonable inference that Perkins kept Martinez prisoner while Jones went outside to get Terrell. After both victims were bound on the ground and Perkins announced somebody would die, Perkins left the garage for three minutes (with Martinez's car keys), yet he came *back* to resume the killings. Perkins knew the outcome: he was present when the third perpetrator came in, took Martinez's pulse, and declared

15

that they needed to hurry because Martinez was not yet dead. The third person left the garage, but Perkins did not. Other evidence of Perkins's aiding and abetting included the fact he was driving Jones's van shortly before the murder and he took Martinez's car keys, supporting an inference he was involved in moving Martinez's body after the crime into Martinez's trunk.

Perkins does not argue that substantial evidence did not support the superior court's finding he was a direct aider and abettor of murder who acted with express malice. Instead, he argues the superior court was precluded from finding him guilty of first degree murder because doing so was "inconsistent with the jury's findings" that Perkins was guilty only of second degree murder. This argument lacks merit.

Most significantly, the superior court did not find that Perkins was guilty of first degree murder; rather, the court found "he was a direct aider [and] abett[or] in the first degree premeditated and deliberated murder of Eric Martinez." Substantial evidence supported the superior court's finding that Jones's murder of Martinez was deliberate and premeditated (that is, first degree) in light of the evidence that Jones summoned Martinez to join him at the side of the house, then directed him into the garage where Perkins tied him up and stood behind him with a gun.

The superior court did not decide (or need to decide) whether Perkins acted with premeditation; rather, the court needed to decide whether Perkins had the specific intent to aid Jones in the deliberate and premeditated murder of Martinez. (*People v. Reyes, supra*, 14 Cal.5th at pp. 990-991.) The court

16

answered this question in the clear affirmative:  "[He's a direct aider and abett[or].  He had specific intent."[4]

C.    *The Superior Court Properly Denied Perkins's Motion To Exclude Terrell's Identification*

As discussed, section 1172.6, subdivision (d)(3), provides that at the evidentiary hearing, "[t]he admission of evidence . . . shall be governed by the Evidence Code, except that *the court may consider evidence previously admitted* at any prior hearing or trial *that is admissible under current law . . . .*" (Italics added.)  Two decades ago, we rejected Perkins's contention that Terrell's identification was unduly suggestive because he was the only subject who appeared in both the photographic lineup and the jailhouse lineup.  (*Jones, supra*, B174393.)  Perkins contends that "significant developments in the law regarding eyewitness identification evidence" since his trial entitle him to a second bite at the apple.  We disagree.

As a general matter, "[t]he mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings.  To the contrary, '[n]othing in the language of section [1172.6] suggests it was intended to provide

---

[4]    Because there was substantial evidence of aiding and abetting murder with the specific intent to kill, we do not reach the superior court's alternative finding that Perkins was guilty of first degree felony murder as a major participant in robbery who acted with reckless indifference to human life.  We note that the court in making this finding was expressly addressing Perkins's argument that the jury's negative finding on the special circumstance allegation meant the jury could not have convicted him on any theory of felony murder.

17

redress for allegedly erroneous prior factfinding. . . . The purpose of section [1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.'" (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947; accord, *People v. Clements* (2022) 75 Cal.App.5th 276, 298 ["[I]n a section [1172.6] petition, the trial judge isn't charged with holding a whole new trial on all the elements of murder. Instead, the parties will focus on evidence made relevant by the amendments to the substantive definition of murder."]; see *Palacios, supra*, 101 Cal.App.5th at p. 954 ["resentencing hearings are not the proper forum to litigate issues that could have been raised at trial"]; see also *Curiel, supra*, 15 Cal.5th at p. 470 ["factual findings should be given preclusive effect. The point . . . is to identify what those factual findings are and how they relate to the elements of [attempted] murder under a valid theory."].)

Accordingly, although "[s]ection 1172.6, subdivision (d)(3), contemplates that there may be some evidence that was admitted at a former trial that would not be admissible under current law," it was "plainly <u>not</u>" the Legislature's intent "that all section 1172.6 hearings would effectively become new court trials." (*People v. Cody* (2023) 92 Cal.App.5th 87, 104 [rejecting defendant's contention that the prosecution must make a showing of witness unavailability before former trial testimony may be admitted at an evidentiary hearing]; accord, *People v. Davenport* (2023) 95 Cal.App.5th 1150, 1159 [if § 1172.6, subd. (d)(3), were construed to "mean[] that properly admitted former witness testimony must once again be run through the rigorous filter of the rules of evidence—but at a different time,

under different circumstances—the exception for previously admitted testimony would be superfluous"]; see *Palacios, supra*, 101 Cal.App.5th at p. 952 [same].)

Moreover, Perkins has not shown how Terrell's identification is evidence that was "made relevant by the amendments to the substantive definition of murder." (*People v. Clements, supra*, 75 Cal.App.5th at p. 298.) Terrell's identification was critical evidence that Perkins was the man in the garage who strangled and robbed Terrell and helped kill Martinez on the morning of August 28, 2002; the identification has no bearing on whether Perkins was convicted based on a now-invalid theory of homicide.[5] Perkins's suppression motion was an improper attempt "to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings," which is not the function of a section 1172.6 evidentiary hearing. (*People v. Farfan, supra*, 71 Cal.App.5th at p. 947.)

---

[5] Perkins argues there have been two relevant changes to the admissibility of identification evidence since his 2004 trial. Section 859.7, which took effect in 2020, imposes on law enforcement agencies numerous requirements for conducting photographic and live lineups to "ensure reliability and accuracy" of eyewitness identifications. (§ 859.7, subd. (a); see Stats. 2018, ch. 977, § 2, eff. Jan. 1, 2019, operative Jan. 1, 2020.) He also argues that the trial court's instruction with CALJIC 2.92 that included as a factor "'[t]he extent to which the witness is either certain or uncertain of the identification'" was error under *People v. Lemcke* (2021) 11 Cal.5th 644 (directing trial courts not to instruct juries on witness certainty). Neither change relates to whether Perkins acted with express malice.

## DISPOSITION

The September 16, 2024 order denying Perkins's petition for resentencing is affirmed.

FEUER, J.

We concur:

SEGAL, Acting P. J.

STONE, J.

20